Consolidated appeal by the People from so much of an order of the County Court, Westchester County, dated July 22, 1975, as, upon inspection of the Grand Jury minutes, pursuant to the motions of the various defendants, dismissed certain indictments against them. Order modified, on the law, by deleting therefrom the provisions which dismissed the indictments against defendants Court, Mazzulla, Cipriani, Bradford and Montana, and the said indictments are reinstated. As so modified, order affirmed insofar as appealed from. The defendants herein are all members of the Mount Vernon Police Department. They have been indicted for grand larceny in the first degree and bribe receiving in the second degree, with certain of the officers also being charged with conspiracy. These indictments grew out of an investigation into gambling and corrupt police practices conducted by the District Attorney’s office and followed testimony by certain individuals before the Grand Jury about systematic payoffs to certain police officers. The essence of the testimony adduced can be easily summarized. Carmine Tripodi, a known and admitted gambler, testified that, between May, 1968 and June, 1971, he operated a bookmaking and policy operation in Mount Vernon and that he *892 paid $700 a month to the gambling squad of the Mount Vernon Police Department for such privilege. He testified that he made these payments to Officer William Court. He thought he made a payment to Weber occasionally, but was not sure. He never made any payments to Officers Panza and Burke. Tripodi also testified that, during the aforesaid period, Detectives Mazzulla and Bradford and Captain Cipriani came to him and were paid money. Joseph Francese, another gambler, testified that he made payments to Detective Mazzulla for police information concerning his gambling activities. These payments were also made out of fear that, if he stopped paying, he would be harassed, arrested and raided. Indeed, when he did cease making these payments, his worst fears were realized and he was raided five times in succession—sometimes without a warrant. Robert Cobb, another gambler in Mount Vernon, testified that he paid Detective Joseph Montana a sum of money so that a poker game which he was operating would not be raided. The County Court Judge dismissed the indictments because, in his opinion, the payments referred to were not made out of fear or under duress or coercion. These payments were considered, by the admitted gamblers themselves, to be part of the expense of conducting a bookmaking operation. Defendants argue that payments made in that vein can hardly be construed as having been coerced. The People dispute this conclusion—fully cognizant of the fact that, under our present law, one cannot be convicted upon the testimony of an accomplice alone (see CPL 60.22; People v diento, 2 NY2d 55). At the outset, the People concede that the fear instilled by the bribe receivers in this type of case is most difficult to prove. Threats which, by their nature, are illegal are generally not publicly expressed nor memorialized in writing. Indeed, threats can be made and clearly understood without verbal communication. Here, the admitted gamblers testified that they were fearful of legal reprisals from the police should they fail to pay them. Francese testified that one of the defendants threatened to plant incriminating evidence on him if he stopped paying. When he did cease his payments, the police raided his establishment five times in succession, sometimes without a warrant. He testified that he was also beaten by the police for having stopped the payments. Once, when Tripodi would not pay off on a bet allegedly placed by Detective Court (but denied by Tripodi), the gambling squad parked its van in front of Tripodi’s store, obviously to deter any gambling operations thereat, until he relented and paid Detective Court $1,000. This, Tripodi believed, was the kind of occurrence which he was paying to prevent. Once, when he was raided, he approached Detectives Bradford and Weber to ascertain the reason therefor—as he had been making his payments. He was informed that the gambling squad had not initiated the raid. All of the gamblers involved herein recognized that if they did not pay they would be harassed and put out of business by the police. The atmosphere pervading such a relationship clearly reeks with coercion. This is not the situation in which a bribe is freely offered and is accepted in the same manner. In such an instance the bribe-giver and receiver are accomplices of one another. At bar, however, the bribe was clearly coerced from the giver; it was the intent of the drafters of the Penal Law not to make the coerced bribe-giver the accomplice of the extortionist. Section 200.05 of the Penal Law provides that in "any prosecution for bribery, it is a defense that the defendant conferred * * * the benefit involved upon the public servant involved as a result of conduct of the latter constituting larceny committed by means of * * * coercion”. It should be added that, according to a commentator, the coercive force against a bribe-giver may very well be the threat to perform an action which the bribe *893 receiver has a legal right to perform (Hechtman, Practice Commentaries, McKinney’s Cons Law of NY, Book 39, Penal Law, § 200.15, pp 418-420). Thus, that commentator notes that a license commissioner who demands a bribe to issue a license to a person entitled to be licensed is nonetheless guilty of extortion. Here certain officers refrained from doing their lawful duty and arresting these gamblers for their illegal activities. It is the opinion of this court that the evidence before the Grand Jury, if believed, would support a jury finding that the defendants whose indictments we are reinstating were not accomplices of the police because the money payments made by them were done so under fear, duress or coercion. Accordingly, their testimony alone is sufficient to uphold the indictments against those defendants who took the money. The indictments against defendants Frank Panza, Richard Burke and Fred Weber, however, were properly dismissed. There was, as to these three officers, insufficient testimony before the Grand Jury to prove that they ever took money from Tripodi. On his first appearance before the Grand Jury, Tripodi testified that he had never made any payments to Panza and Burke and was unsure that he ever paid Weber. On his second Grand Jury appearance, he affirmed such testimony. He did say that his $700 a month payment was for the entire gambling squad, of which Burke, Panza and Weber were members, but at no time was testimony adduced which specifically pointed to them as sharing in that money. Latham, Acting P. J., Margett, Damiani, Titone and Hawkins, JJ., concur.